

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00781-CV

**CITY OF SHAVANO PARK**,
Appellant

v.

**ARD MOR, INC.**, Texas Ardmor Properties, L.P., and Texas Ardmor Management, LLC,
Appellees

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2014-CI-10796
Honorable Richard Price, Judge Presiding

## OPINION ON MOTION FOR REHEARING

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  October 28, 2015

AFFIRMED IN PART, REVERSED AND RENDERED IN PART, REMANDED

This is an appeal from the trial court's denial of appellant's plea to the jurisdiction. In an opinion and judgment dated July 29, 2015, we affirmed in part, reversed and rendered a dismissal in favor of appellant in part, and remanded for further proceedings. On August 13, 2015, appellant filed a motion for rehearing. Although we deny the motion for rehearing, we withdraw our opinion and judgment of July 29, 2015, and issue this opinion and judgment in their place for the purpose of clarifying why we believe remand is appropriate.

**BACKGROUND**

Texas Ardmore Properties, LP and Texas Ardmore Management, LLC are the owners of real property located in Bexar County, Texas. Ard Mor, Inc. operates a childcare facility on the property.[1] Lockhill Ventures, LLC owns two lots of land adjacent to the childcare facility. Lockhill Ventures intends to build a gas station and gas storage tanks next to Ard Mor's facility. Lockhill Ventures' property is subject to restrictive covenants contained in a Declaration of Protective Covenants. The covenants permitted uses include: "[o]ffice, commercial, retail, restaurants, financial institutions, multi-family, office service, schools, churches, health care or medical facilities, or as otherwise permitted to the maximum extent by applicable zoning laws or other Governmental Regulations, unless expressly prohibited herein." [Emphasis added.] The covenants prohibited uses include: (1) "any use prohibited by applicable zoning laws or other Governmental Regulations," (2) "[a]ny use which is noxious or offensive by reason of emission or discharge of excessive . . . fumes or wastes, odorous, or particulate matter," or (3) the "[s]torage, handling or use of explosive material."

The City of Shavano Park is located in Bexar County. The City's zoning ordinances and tables of permitted uses do not specify gasoline filling stations as a permitted use. Lockhill Ventures' property was not originally within the City limits. However, the City and Lockhill Ventures entered into a "Development and Annexation Agreement" (the "Agreement") under which (1) the parties agreed to annexation of Lockhill Ventures' property by the City, (2) the parties acknowledged the proposed zoning of the property within the City limits, and (3) the City agreed to initiate zoning of the property, upon approval by its city council of the annexation petition and the Agreement, to allow Lockhill Ventures the right to develop the property in

---

[1] Texas Ardmore Properties, LP; Texas Ardmore Management, LLC; and Ard Mor, Inc. are collectively referred to herein as appellees.

accordance with the terms of the Agreement. The Agreement defined the "project" as follows: "The Development of the Property as two buildings being; (i) a convenience store, with gasoline sales, lottery and lotto, tobacco and beer and wine sales and automatic carwash; and (ii) approximately 2400 feet of retail or office lease space provided that the retail use complies with the B2 permanent zoning assigned the property." The Agreement also provided that, in the event city council action placed the property in a zoning district or classification that prohibited the uses proposed by the Agreement, the parties agreed Lockhill Ventures could either terminate the Agreement or "pursuant to Texas Local Government Code Section 43.002 and to the extent reasonably necessary, retain the right to develop and use the Property for the purposes authorized under [the] Agreement."

The City of Shavano Park city council was scheduled to consider Lockhill Ventures' proposal for the Agreement on July 9, 2014. On that same date, appellees filed suit against both Lockhill Ventures and the City. In their petition, appellees requested a declaration that Lockhill Ventures' intended use of its property did not comply with the Declarations of Protective Covenants or with the City's zoning ordinances. Appellees requested an injunction restraining Lockhill Ventures from any development of the property or improvement of the property for the purpose of dispensing gasoline until the trial court had an opportunity to construe the ordinances to determine the parties' rights and obligations under the covenants, zoning ordinances, and other applicable laws and regulations. Appellees did not seek injunctive relief against the City.

Appellees asked the trial court to construe the City's ordinances and other materials and declare: (1) the Agreement void and unenforceable because it is unlawful contract zoning, (2) the Agreement violates existing ordinances, (3) a City ordinance to annex the property resulted from an illegal contract, (4) the City's interpretation of its ordinances to allow Lockhill Ventures to develop its property in a manner that violates the City's Code of Ordinances violates equal

protection rights, and (5) the actions of the City and its officials in contracting with Lockhill Ventures and passing the annexation ordinance were *ultra vires* acts. Appellees also asserted a breach of contract claim against Lockhill Ventures, alleging Lockhill Ventures breached the Declaration of Protective Covenants.

On July 9, the trial court granted a temporary restraining order restraining Lockhill Ventures from commencing or continuing development of its property. The trial court set a hearing on the requested temporary injunction for July 23, 2014. On the evening of July 9, the City of Shavano Park city council approved the Development and Annexation Agreement and passed an ordinance annexing the property within the City limits.[2]

On July 23, 2014, the City filed a plea to the jurisdiction, but did not set it for a hearing when the plea was filed. The hearing on the temporary injunction commenced on July 30, 2014, continued over several days, and concluded on September 19, 2014. A few days before the final day of the injunction hearing, the City filed a supplement to its plea to the jurisdiction and set the plea for a hearing on September 19, 2014.

Over the various days of the hearing, the trial court heard evidence on the requested temporary injunction. On day three of the hearing, the City asked the trial court to consider its plea. The trial court declined the request on the grounds that the only matter set before the court was the temporary injunction and the City was not enjoined by the temporary restraining order. On the last day of the hearing, September 19, the City again asked the trial court to consider its plea. The court later issued an order denying the plea without stating its grounds. A few days

---

[2] Ordinance No. O-2014-014 (hereinafter, the "annexation ordinance") is the ordinance approved by the city council that annexed Lockhill Ventures' property.

later, the trial court issued a temporary injunction against Lockhill Ventures enjoining Lockhill Ventures from commencing or continuing development of its property.[3]

In this interlocutory appeal, we consider only whether the trial court erred by denying the City's plea to the jurisdiction.

## APPELLEES' REQUEST FOR DECLARATORY RELIEF

As to the City, appellees asked the trial court to declare that Lockhill Ventures' intended use of its property to dispense gasoline violated the City's ordinances in several ways, including that (1) use of the premises as a gasoline station will involve business activities that violate Ordinance 36-39(6) and (7); (2) the proposed use of the property is not a permitted use under any zoning category in the City; (3) in the Agreement, the City agreed to permit Lockhill Ventures to develop the property in a manner that violates several City zoning ordinances; and (4) the Agreement does not comply with Code of Ordinances Section 36-40 and does not create or contract for the creation of a Planned Unit Development in compliance with the ordinance. In an amended pleading filed after the City filed its plea to the jurisdiction, appellees added additional requests for declaratory relief: (1) declare the Agreement void and unenforceable because it is unlawful contract zoning, (2) declare the annexation ordinance void, and (3) declare the actions of the City and its officials in contracting with Lockhill Ventures and approving the annexation ordinance to be *ultra vires* acts and violative of appellees' equal protection rights. Thus, appellees' requests for declaratory relief against the City fall into four requests for relief: construe various City ordinances, declare the Agreement void, declare the annexation ordinance void, and declare the actions of the City and its officials to be *ultra vires* acts and violative of due process rights.

---

[3] The injunction is not the subject of the current appeal.

In its initial plea to the jurisdiction, the City asserted (1) pursuant to Texas Civil Practice and Remedies Code section 37.006 it is not a necessary or proper party because appellees did not challenge the validity of an ordinance; (2) no justiciable interest exists between appellees and the City because the property lies within the City's extraterritorial jurisdiction; therefore, the City's ordinances do not apply to the property; and (3) appellees lack standing to sue the City because no act attributable to the City demonstrates any particularized harm to appellees. After appellees filed their amended petition, the City filed a supplemental plea to the jurisdiction, asserting (1) only the State may challenge the City's annexation of Lockhill Ventures' property in a *quo warranto* proceeding; therefore, appellees lacked standing to bring a private cause of action; and (2) appellees lacked standing to challenge the Agreement between the City and Lockhill Ventures.

On appeal, the City asserts (1) appellees lack standing to seek a declaration that the Agreement is void; (2) appellees' request to invalidate the annexation ordinance passed by the city council fails because only a *quo warranto* proceeding may challenge an annexation ordinance; (3) appellees' equal protection claim fails; (4) appellees' *ultra vires* claim fails; and (5) appellees cannot show a cognizable claim and (in a single sentence) the "court may interpret the City's existing ordinances without the City being a party if necessary to the covenants."

## STANDARD OF REVIEW

In its plea, the City asserted appellees failed to plead any proper underlying claims or seek any relief that invoked the trial court's jurisdiction, and appellees failed to demonstrate standing in their suit against the City. Sovereign immunity from suit defeats a trial court's subject matter jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). Whether a court has subject matter jurisdiction is a question of law, which we review de novo. *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). In our review, we do not delve into the merits of a case or decide whether the plaintiff should win or lose on its

claims. *City of Argyle v. Pierce*, 258 S.W.3d 674, 682 (Tex. App.—Fort Worth 2008, pet. dism'd). Instead, we merely decide whether the trial court has the power to reach the merits of those claims. *Id.*

To prevail on a plea to the jurisdiction, a party must show that even if all the allegations in the plaintiff's pleadings are taken as true, an incurable defect apparent on the face of the pleadings makes it impossible for the pleadings to confer jurisdiction on the trial court. *Rylander v. Caldwell*, 23 S.W.3d 132, 135 (Tex. App.—Austin 2000, no pet.). When a plea to the jurisdiction challenges the pleadings, we determine if the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Miranda*, 133 S.W.3d at 226. We construe the pleadings liberally in favor of the plaintiff and look to the plaintiff's intent. *Id.* If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *Id.* at 226-27. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id.* at 227.

If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000) (confining evidentiary review to evidence that is relevant to the jurisdictional issue). The procedure for a plea to the jurisdiction when evidence has been submitted to the trial court mirrors that of a traditional motion for summary judgment. *Miranda*, 133 S.W.3d at 228; *see also* TEX. R. CIV. P. 166a(c). Thus, the burden is on the governmental entity, as the movant, to present evidence establishing the trial court lacks jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at 228. Thereafter, the burden shifts to the plaintiff to demonstrate a disputed issue of material fact

exists regarding the jurisdictional issue. *Id.* If the evidence creates a fact question regarding jurisdiction, the trial court must deny the plea to the jurisdiction and leave its resolution to the fact finder. *Id.* at 227-28. On the other hand, if the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228.

### DECLARATION THAT DEVELOPMENT AND ANNEXATION AGREEMENT IS VOID

In their petition, appellees asked the trial court to declare the Agreement between the City and Lockhill Ventures void on the grounds that the Agreement is improper contract zoning. Generally, a city has authority to annex an area if it is within its extraterritorial jurisdiction, or if it owns the area. TEX. LOC. GOV'T CODE ANN. § 43.051 (West 2008); *City of San Antonio v. Hardee*, 70 S.W.3d 207, 211 (Tex. App.—San Antonio 2001, no pet.). And, there is no dispute a city has authority to enter into a written contract with an owner of land located in the city's extraterritorial jurisdiction. *See* TEX. LOC. GOV'T CODE ANN. § 212.172(b) (West Supp. 2015). Therefore, the City had the statutory right to enter into a development agreement with Lockhill Ventures regarding annexation of Lockhill Ventures' property. *Id.* The issue here is whether appellees have standing to seek a declaration from the trial court that the Agreement between the City and Lockhill Ventures is void on the grounds that the Agreement is improper contract zoning.

The premise of the City's argument on appeal appears to be that there is no injury appellees can identify that is attributable to the Agreement; the purported contracting away of the City's legislative functions fails to show injury; the tax payer exception for particularized injury fails because appellees are not taxpayers nor can they show the requisite expenditure; and no justiciable interest exists because any complained-of acts occur in the future.

The general test for constitutional standing in Texas courts is whether there is a "real" (i.e., justiciable) controversy between the parties that will actually be determined by the judicial declaration sought. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993); *Save Our Springs Alliance, Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 878 (Tex. App.—Austin 2010, pet. denied). For a party to have standing to challenge a governmental action, as a general rule, it "must demonstrate a particularized interest in a conflict distinct from that sustained by the public at large." *South Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 307 (Tex. 2007); *see Brown v. Todd*, 53 S.W.3d 297, 302 (Tex. 2001) ("Our decisions have always required a plaintiff to allege some injury distinct from that sustained by the public at large.").

The United States Supreme Court, applying standing principles that are analogous to Texas standing jurisprudence at least with respect to challenges to governmental action, has explained that the "irreducible constitutional minimum" of standing consists of three elements: (1) "the plaintiff must have suffered an 'injury in fact'—an invasion of a 'legally protected' [or cognizable] interest which is (a) concrete and particularized and (b) 'actual or imminent, not conjectural or hypothetical'"; (2) "there must be a causal connection between the injury and the conduct complained of"—the injury must be "fairly traceable" to the challenged action of the defendant and not the independent action of a third party not before the court; and (3) it must be likely, and not merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see Brown*, 53 S.W.3d at 305 ("[W]e may look to the similar federal standing requirements for guidance."); *Save Our Springs Alliance, Inc.*, 304 S.W.3d at 878 (citing *Lujan*).

The only testimony regarding particularized injury to the day care facility would have been offered through the testimony of Sandra Nunez, a director of the Luv-N-Care Child Development Center located on Ard Mor's property. Ms. Nunez testified on the first day of the temporary

injunction hearing, before the City actually set its plea to the jurisdiction for a hearing. Lockhill Ventures' attorney objected that Nunez's testimony was irrelevant because, according to Lockhill Ventures, appellees did not have the burden to show injury when a temporary injunction is sought in the context of a breach of a restrictive covenant proceeding. The City expressed no opinion on whether Nunez should testify. The trial court ruled it would "follow the law in this matter."

"[A] court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised." *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555. "The court should, of course, confine itself to the evidence relevant to the jurisdictional issue." *Id.* As stated above, the City, as the movant, had the burden to present evidence establishing the trial court lacked jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at 228. The burden did not shift to the appellees until the City satisfied its burden. *Id.* Our review of the record reveals that, over the first three days of the hearing, the trial court focused on whether appellees established their entitlement to a temporary injunction. The City did not set its plea to the jurisdiction for a hearing when it filed its initial plea. Instead, the City waited until four days before the last day of the temporary injunction hearing to set its plea for a hearing. By the last day, all except one witness had testified,[4] and Lockhill Ventures had earlier objected to testimony about the daycare facility as irrelevant to the temporary injunction issue. Because the record reveals a full evidentiary hearing on the City's plea was not conducted on the date the City set its plea for a hearing, we conclude appellees were not given an opportunity to fully develop evidence relevant to the City's jurisdictional challenge to appellees' standing to request that the trial court declare the Agreement void. *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 96, 100 (Tex. 2012) ("a plaintiff may not have had fair opportunity to address jurisdictional

---

[4] The last witness to testify and the only witness to testify on September 19 was Brian Lee Skelly, an expert in fire investigations called by Lockhill Ventures. On September 19, the City cross-examined Skelly.

issues by amending its pleadings or developing the record when the jurisdictional issues were not raised in the trial court"); *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555 (acknowledging possibility of remand for full evidentiary hearing). Therefore, remand on this claim is appropriate.

## VALIDITY OF ANNEXATION ORDINANCE

In addition to seeking a declaration that the Agreement was void, appellees also asked the trial court to declare that the annexation ordinance resulted from an illegal contract between the City and Lockhill Ventures; therefore, the contract is void and the resulting ordinance is void.

The Texas Declaratory Judgment Act (the "DJA") requires that relevant governmental entities be made parties, and thereby waives immunity, for claims challenging the validity of ordinances or statutes. TEX. CIV. PRAC. & REM. CODE ANN. § 37.006(b) (West 2015) ("In any proceeding that involves the validity of a municipal ordinance or franchise, the municipality must be made a party and is entitled to be heard, and if the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard."); *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 622 (Tex. 2011) ("For example, the state may be a proper party to a declaratory judgment action that challenges the validity of a statute."); *Heinrich*, 284 S.W.3d at 373 n.6 (same). However, the DJA does not enlarge a trial court's jurisdiction, and a plaintiff's request for declaratory relief does not confer jurisdiction on a court or change a suit's underlying nature.

On appeal, the City concedes section 37.006 may require a city be included in a suit when an ordinance is sought to be invalidated. However, the City asserts a proper claim under section 37.006 must first exist. The City contends a proper claim does not exist here because only a *quo warranto* proceeding brought by the State may challenge the annexation ordinance. Therefore, the City concludes appellees do not have standing to bring a declaratory judgment action to invalidate the annexation ordinance under section 37.006.

The determination of whether an individual landowner, as opposed to the State in a *quo warranto* proceeding, has standing to challenge annexation turns on whether the challenge attacks a city's authority to annex the area or merely complains of a violation of statutory procedure. *City of San Antonio v. Summerglen Prop. Owners Ass'n Inc.*, 185 S.W.3d 74, 83 (Tex. App.—San Antonio 2005, pet. denied); *Hardee*, 70 S.W.3d at 210. Procedural irregularities in the exercise of a city's annexation power may render the annexation voidable, but do not render the annexation void. *Summerglen Prop. Owners Ass'n*, 185 S.W.3d at 83; *Hardee*, 70 S.W.3d at 211.

The purpose of a *quo warranto* proceeding is to question the right of a person or corporation, including a municipality, to exercise a public franchise or office. *Alexander Oil Co. v. City of Seguin*, 825 S.W.2d 434, 436-37 (Tex. 1991). Thus, a *quo warranto* suit by the State on behalf of its citizens is the only proper method to challenge procedural irregularities such as lack of notice, adequacy of the service plan, lack of a quorum for hearing, and other defects in the process of adopting an annexation ordinance. *Id.* at 438. Through *quo warranto* proceedings, "the State acts to protect itself and the good of the public generally, through the duly chosen agents of the State who have full control of the proceeding." *Fuller Springs v. State ex rel. City of Lufkin*, 513 S.W.2d 17, 19 (Tex. 1974). Therefore, the State must bring the action to question irregular use of the delegated annexation authority. *Alexander Oil*, 825 S.W.2d at 437. A *quo warranto* proceeding settles the validity of the annexation on behalf of all property owners in the subject area, and avoids the problems of successive individual suits that are only binding on the parties and may yield conflicting results. *Id.*

On the other hand, if the annexation ordinance is wholly void, a *quo warranto* proceeding is not required. *Id.* at 436 ("The only proper method for attacking the validity of a city's annexation of territory is by *quo warranto* proceeding, unless the annexation is wholly void."). When objections are leveled to an annexation ordinance relating to irregularities that make it voidable

only, such objections must be raised by *quo warranto*; but if an annexation ordinance is challenged as wholly void, it may be challenged by collateral attack by any person affected by the ordinance. *Id.* Private party challenges to annexation are permitted when the challenge is based on the municipality exceeding the annexation authority delegated to it by the Legislature. *Id.* at 438 (citing as examples private causes of action challenging an annexation as exceeding statutory municipal size limits, including areas within extraterritorial jurisdiction of another city, including areas not contiguous with current city limits, and annexation of an area with a boundary description that does not close); *see also Hardee*, 70 S.W.3d at 210 (same).

Accordingly, in this appeal, we must determine whether appellees' allegation that the annexation ordinance is wholly void, and not merely voidable, is based on a procedural defect in the annexation process, or on the City exceeding its annexation authority as delegated by the Legislature.

Appellees do not challenge any procedural defect in the annexation process, the City's right to annex Lockhill Ventures' property, or the City's right to include gasoline stations within its zoning classifications. The appellees challenge the fact that the City intentionally excluded "gas filling stations" from all of its zoning districts, while simultaneously contracting with Lockhill Ventures for the development of a gasoline station. In other words, according to appellees, the ordinance is wholly void because it constitutes contract zoning.

Impermissible "contract zoning" occurs when a governmental entity agrees to zone land in a certain way in exchange for a landowner's agreement to use the land in a certain way. *See City of White Settlement v. Super Wash, Inc.*, 198 S.W.3d 770, 772 n.2 (Tex. 2006). Zoning is a legislative function a city cannot cede. *Super Wash, Inc. v. City of White Settlement*, 131 S.W.3d 249, 257 (Tex. App.—Fort Worth 2004), *rev'd on other grounds*, 198 S.W.3d 770 (Tex. 2006). Therefore, a city cannot surrender its authority to determine proper land use by contract. *Id.*

Zoning decisions must occur via the legislative process and not by "special arrangement" with a property owner. *Id.* "[C]ontract zoning is invalid because, by entering into such agreements, the city impermissibly abdicates its authority to determine proper land use, effectively bypassing the entire legislative process." *Super Wash*, 198 S.W.3d at 772 n.2.

On appeal, the substance of the City's challenge to appellees' standing to bring a declaratory judgment action implicates the merits of whether the ordinance *actually is* the result of improper contract zoning. However, in this interlocutory appeal from the denial of the City's plea to the jurisdiction, we do not reach the merits of that claim.[5] Instead, we address only whether the trial court has *the power* to reach the merits of appellees' claim. *See City of Argyle*, 258 S.W.3d at 682. We conclude that, because appellees' request for a declaratory judgment rests on whether the annexation ordinance is wholly void, and not merely voidable, a *quo warranto* proceeding was not required to challenge whether the annexation ordinance is void as the result of contract zoning. Therefore, the trial court did not err in denying the City's plea to the jurisdiction based on its argument that appellees lack standing because only the State could challenge the City's annexation ordinance in a *quo warranto* proceeding.[6]

---

[5] On appeal, the City relies on *Super Wash, Inc. v. City of White Settlement*, 131 S.W.3d 249 (Tex. App.—Fort Worth 2004, *rev'd on other grounds*, 198 S.W.3d 770 (Tex. 2006), to assert this court may examine whether the Agreement here is the product of contract zoning. According to the City, the court in *Super Wash* examined the contract at issue in that case to determine whether the contract bound the city. The City's reliance on *Super Wash* is misplaced. In that case, the city moved for summary judgment on the grounds that Super Wash lacked standing to challenge a zoning ordinance, and Super Wash moved for summary judgment on the grounds that the ordinance's fencing requirement was impermissible contract zoning. After the court of appeals determined Super Wash had standing to challenge the validity and the city's enforcement of the ordinance, *id.* at 255, the court next turned to the issue of whether Super Wash was entitled to summary judgment on its claim that the fence requirement contained in the ordinance was invalid contract zoning. *Id.* at 257. Therefore, unlike here, the actual *merits* of the contract zoning argument was at issue in *Super Wash*.

[6] In its plea to the jurisdiction and on appeal, the City does not otherwise argue appellees lack standing to challenge the annexation ordinance.

## EQUAL PROTECTION CLAIM

In their amended petition, appellees asked the trial court to "construe the ordinances and other materials and declare that . . . the [City's] construction of its ordinances to allow defendant Lockhill [Ventures] to develop its property in a manner that violates its Code of Ordinances violates [appellees'] and other similarly situated persons' rights to equal protection under its laws or otherwise causes injury . . . ." An equal protection claim "requires that the government treat the claimant different from other similarly-situated landowners without any reasonable basis." *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 939 (Tex. 1998). The purpose of the equal protection clause is to secure persons against intentional and arbitrary discrimination. *City of Dallas v. Jones*, 331 S.W.3d 781, 787 (Tex. App.—Dallas 2010, pet. dism'd); *Leonard v. Abbott*, 171 S.W.3d 451, 458 (Tex. App.—Austin 2005, pet. denied). It is critical, however, that the plaintiff allege it is being treated differently from those whose situation is directly comparable in all material respects. *City of Dallas*, 331 S.W.3d at 787. Appellees failed to allege, in their petition, before the trial court, or on appeal, any facts that they were similarly situated with others but were treated differently. Further, nothing in the record indicates that a similarly situated class has been treated differently in this case. Therefore, the trial court erred in denying the City's plea to the jurisdiction on appellees' equal protection claim.[7]

## *ULTRA VIRES* CLAIM

In their amended petition, appellees asked the trial court to "construe the ordinances and other materials and declare that . . . the actions of [the City] and its officials in contracting with

---

[7] We do not believe appellees' petition can be amended to include this essential allegation or that there is a need for a remand for an evidentiary hearing with respect to the equal protection claim, as no facts demonstrating an equal protection cause of action have been otherwise asserted or argued.

Lockhill [Ventures] and approving [the annexation ordinance] at the city council meeting on July 9, 2014 were *ultra vires* acts."

An *ultra vires* claim is "'an action to determine or protect a private party's rights against a state official who has acted without legal or statutory authority . . . .'" *Heinrich*, 284 S.W.3d at 370 (citation omitted). To fall within the *ultra vires* exception to sovereign immunity, "a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.* at 372. However, suits complaining of *ultra vires* actions may not be brought against a governmental unit, but must be brought against the allegedly responsible government actor in his official capacity. *Id.* at 373. Appellees did not sue any City official in his or her official capacity. Therefore, the trial court erred in denying the City's plea to the jurisdiction on appellees' *ultra vires* claim.

## CONSTRUCTION OF THE CITY'S ORDINANCES

In addition to asking the trial court to declare the annexation ordinance void, appellees also asked the trial court to construe the meaning of various City ordinances and declare that Lockhill Ventures' intended use of the property to dispense gasoline violated the City's ordinances in several ways. Appellees assert they have standing to seek such declarations as against the City, and they rely on Texas Civil Practice and Remedies Code section 37.004, which provides as follows: "A person . . . whose rights, status, or other legal relations are affected by a . . . municipal ordinance . . . may have determined any question of construction or validity arising under the . . . ordinance . . . and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) (West 2015).

On appeal, the City does not clearly and concisely argue appellees lack standing to ask the trial court to construe various City ordinances. *See* TEX. R. APP. P. 38.1(f), (i). In a single sentence

on appeal, the City states "[t]he court may interpret the City's existing ordinances without the City being a party if necessary to the covenants." We cannot construe this sentence as a challenge on appeal to appellees' right to ask the trial court to construe the City ordinances. And, to the degree the City intended this sentence to raise such a challenge on appeal, it is inadequately briefed. *See id.* Therefore, we do not address whether the trial court erred in denying the City's plea to the jurisdiction as to these requests for declaratory relief.

## CONCLUSION

We affirm the trial court's order denying the City's plea to the jurisdiction with respect to appellees' request that the trial court declare the annexation ordinance void. We reverse the trial court's order denying the City's plea to the jurisdiction with respect to appellees' equal protection claim and appellees' *ultra vires* claim; and we render a dismissal of these claims in favor of the City. We reverse the trial court's order denying the City's plea to the jurisdiction with respect to appellees' request that the trial court declare the Development and Annexation Agreement void, and we remand for further proceedings consistent with this opinion.

Sandee Bryan Marion, Chief Justice